# CHARLESTON.

## FIRST NATIONAL BANK *v*. BANK OF KEYSTONE.

Submitted February 6, 1912.   Decided September 23, 1913.

ACCOUNT STATED—*Sufficiency of Evidence.*

> The judgment below is supported by the facts proven, and is therefore affirmed.

Error to Circuit Court, McDowell County.

Action by the First National Bank against the Bank of Keystone. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Anderson, Strother & Hughes,* for plaintiff in error.

*French & Easley,* and *Ira J. Partlow,* for defendant in error.

MILLER, JUDGE:

Plaintiff, successor of the Citizens Bank of Welch, sued defendant in assumpsit, a state bank organized for the purpose and which in 1905, purchased and took over the business, property and assets of a branch of the Citizens Bank of Welch, theretofore conducted at Keystone, to recover an alleged balance due it under the contract of sale and purchase made and executed by and on behalf of the respective parties thereto.

The declaration contained the common counts, also a special count on the contract, the latter alleging a breach thereof by defendant. Besides the general issue, two special pleas in writing were filed by defendant over the objection of plaintiff, pleading in abatement of the suit an alleged judgment or award of arbitrators, pending the suit, to whom it is alleged all matters in difference in the suit had been submitted by a parol contract between the parties. The demurrer of plaintiff to the special pleas was overruled, and issue was joined on the plea of non assumpsit and on the special pleas with general replication thereto, and the case submitted to the court in lieu of a jury, and for final judgment.

On the special pleas the court found for plaintiff; but on the merits, and on the general issue, the court found for defendant, and the judgment of nil capiat has been brought here by plaintiff for review.

By the contract pleaded in the special count the Citizens Bank of Welch agreed to turn over and sell to defendant as of April 1, 1905, said branch, its safe, stationery, discount accounts, deposit accounts, and all other property of its branch bank, and the defendant thereby agreed to purchase the same, and to pay plaintiff's predecessor therefor the original cost price; also to reimburse and pay it any and all sums lost in excess of all earnings of the branch bank, in the payment of salary, rent, traveling expenses, and all other outlays in the conduct of said branch bank, from its establishment up to April 1, 1905.

The original bill of particulars filed with the declaration contained two items, as follows: To account stated, May 21, 1908, $562.37. Proceeds note for $300.00, dated Jan. 11, 1905, due 90 days after date, made by Ira. P. Quesenbery, endorsed &c.,

and payable to Citizens Bank of Welch, $300.00. Total $862.37. Pending the suit, and before pleas filed plaintiff was permitted, over objection, to amend the bill of particulars, by adding the item: To account stated, $816.44.

It appears from the record that after the purchase of the business of this branch bank by defendant, the old account between the parent and the branch bank was continued on the books of the plaintiff, and that the $816.44, was the balance shown by the books of the plaintiff bank to be due from the defendant to it, as of October 2, 1908, when all business relations ceased, and this suit, after some efforts to adjust differences failed, was brought in December following.

The view we take of the case renders it unnecessary for us to deal with the cross-assignments of error relating to the special pleas in writing. In our opinion the findings of fact and the judgment of the court below thereon for defendant on the general issue must be sustained.

On the trial the two items of the original bill of particulars were practically abandoned, and reliance was placed solely on the item added by the amendment: "To account stated, $816.44." There is no evidence of an account stated covering this item. The only evidence relating to it is that plaintiff's books show this balance. The evidence is not as clear, it seems to us, as it might have been on the matters of account to which the contract relates. It is quite clear, however, that after the sale and purchase by defendant of the branch bank, the parent bank rendered defendant an account of items of expenses disbursed by it on account of the business of the branch bank, including the item, safe $800.00, and aggregating about $1,208.21, and with which defendant credited it. Included in this statement were items of expenses disbursed by the parent bank, aggregating $312.72, which the cashier of defendant, who was also cashier of the branch bank, and kept its books, swears were credited to the parent bank, and charged to expenses. The balance $629.23, he swears "was the amount of our loss," and was the amount paid out by the branch bank, and carried there in expense account, and which with the $312.72, charged to that account, on the rendition of the account for $1,208.21, by the parent

bank, made up the sum $941.95, net loss, of the branch bank, after deducting earnings on the business done for the year, the total expenses according to this witness amounting to $1,756.20. On the trial this witness was pressed hard by the court and opposing counsel, to explain how and in what manner, if at all, defendant had reimbursed the plaintiff the amount of this net loss. He admitted that defendant had never paid this money, but answered that it had given the parent bank credit for $312.72, expenses paid by it, and as to the item $941.95, representing the net loss of the branch bank after deducting earnings, the new bank had carried that amount to expense account and carried it there until the earnings were sufficient to charge it off. On cross-examination this witness testified as follows: "Q. When he rendered that statement showing what expenditures had been made of what furniture had been furnished to the branch bank, what course was pursued then? A. Do you mean after the branch was opened up? Q. From the first. A. That was kept here. We didn't have any statement of that until we bought the branch bank out, then Mr. Woodward rendered a statement showing the furniture and fixtures and the expenses they had borne, such as stationery. He rendered us a statement and we charged that to their respective accounts and gave them credit for these things." Further on in his cross-examination this witness further explains that the $312.72, was the entire amount of expenses paid out by the parent bank, according to the statement rendered, and for which it had credit, and that the balance of the total loss of $941.95, namely $629.23, was the amount of the loss shown on the books of the branch bank. As we interpret the whole evidence, and the testimony of the bookkeepers given in technical terms, the facts are: That certain of the expenses and disbursements for furniture, &c., for the branch bank were paid by the parent bank, and the record thereof kept there while other expenses were paid out of the funds at the branch bank, and the record thereof kept there. And when the sale of the branch was made to defendant, such of the disbursements for furniture and expenses as had been made by the parent bank were covered by the statement then rendered aggregating $1,208.21, and with which the old bank was given credit on the books of the new, the

account, furniture and fixtures, being charged with part of the account, and expenses with the residue. Then after an invoice of the accounts of discounts and deposits at the branch bank, purchased by the defendant, the result was a showing of a loss of $941.95, which was carried on the books of the defendant, in expense account, until the earnings enabled it to charge that amount off, and in this way the old bank got paid the loss, for the loss was in this way assumed by defendant, otherwise the old bank would have been obliged under its contract with defendant to make good the deficiency of discounts and other assets to cover the deposit accounts taken over by the defendant bank in the purchase. As noted, the evidence is not clear. It seems to us it might easily have been made so. But we think the court below fairly concluded, that defendant was not indebted to plaintiff on an account stated, or on any account, and our opinion is to affirm the judgment.

*Affirmed.*